1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GRADY LEE,

11           Plaintiff,                          No. CIV S-06-0630 DAD PS

12      v.

13   JOHN E. POTTER, Postmaster
     General, U.S. Postal Service Agency,        ORDER
14
             Defendant.
15   _____/

16           This case came before the court on September 21, 2007, for hearing of

17   defendant's motion for summary judgment or partial summary adjudication and plaintiff's

18   counter-motion for summary judgment.  Plaintiff appeared on his own behalf, and E. Robert

19   Wright, Esq., appeared for defendant.  At that time the court denied plaintiff's counter-motion

20   but granted plaintiff leave to file supplemental opposition to defendant's motion and set a new

21   hearing date.  The case came before the court again on November 30, 2007, for hearing of

22   defendant's motion.  Plaintiff appeared on his own behalf, and E. Robert Wright appeared for

23   defendant.  The parties were heard, and the court took defendant's motion under submission.

24           Upon consideration of the parties' statements in open court on September 21,

25   2007 and November 30, 2007, as well as all written materials submitted in connection with

26   defendant's motion, the undersigned will grant defendant's motion for summary judgment.

                                                  1

PROCEDURAL HISTORY

Plaintiff commenced this action on March 24, 2006, by submitting a pro se complaint with the required filing fee.  Plaintiff alleges that a supervisor at his place of work created a hostile work environment by repeatedly harassing plaintiff and using a racial epithet on one occasion.  Plaintiff alleges that he suffered injury and pursued administrative remedies. Plaintiff seeks $350,000 in damages.

Defendant filed an answer to the complaint on January 10, 2007.  The case was reassigned to the undersigned magistrate judge on March 27, 2007.  Pursuant to the Status (Pretrial Scheduling) Order filed March 27, 2007, discovery closed on November 9, 2007, and the last day for motions to be heard is January 8, 2008.  Final pretrial conference is set for March 14, 2008, and trial is set for May 5, 2008.

STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Owen v. Local No. 169, 971 F.2d 347, 355 (9th Cir. 1992).

> A party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Celotex Corp., 477 U.S. at 323.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of

1   an element essential to that party's case, and on which that party will bear the burden of proof at

2   trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the

3   nonmoving party's case necessarily renders all other facts immaterial." Id. In such a

4   circumstance, summary judgment should be granted, "so long as whatever is before the district

5   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

6   satisfied." Id. at 323.

7           If the moving party meets its initial responsibility, the burden then shifts to the

8   opposing party to establish that a genuine issue as to any material fact actually does exist.

9   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l

10  Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles,

11  607 F.2d 1276, 1280 (9th Cir. 1979).  The opposing party must demonstrate that the fact in

12  contention is material, i.e., a fact might affect the outcome of the suit under the governing

13  law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a

14  verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

15  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

16  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

17  order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting

18  Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

19                                              ANALYSIS

20          Defendant seeks summary judgment or partial summary adjudication on the

21  ground that plaintiff cannot demonstrate as a matter of law that the United States Postal Service

22  subjected plaintiff to a hostile work environment or retaliated against him.  Defendant asserts that

23  plaintiff failed to timely exhaust administrative remedies as to several incidents of allegedly

24  harassing conduct and that the two exhausted incidents occurred on the same day during a single

25  course of events during which a supervisor used a racial epithet in reference to plaintiff.

26  Defendant contends that one use of a racial epithet is insufficient as a matter of law to sustain a

1  claim for racial discrimination and plaintiff has not alleged facts sufficient to state a prima facie

2  case of retaliation.

3          Defendant's statement of undisputed facts is supported by citations to plaintiff's

4  complaint, the transcript of plaintiff's deposition taken April 23, 2007, and four exhibits attached

5  to counsel's declaration:  Exhibit B, Postal Service EEO Case Partial Acceptance/Dismissal

6  dated December 3, 2004, in Agency Case No. 1F-957-0058-04; Exhibit C, Final Agency

7  Decision dated April 26, 2005, in Agency Case No. 1F-957-0058-04; Exhibit D, Decision of the

8  EEOC dated November 7, 2005, in Appeal Case No. 01A54157; and Exhibit E, Denial of

9  Request for Reconsideration by EEOC dated December 28, 2005, in Appeal Case No. 01A54157.

10  (Def.'s Mot. for Summ. J., Wright Decl., Exs. B - E.)

11          Defendant's evidence demonstrates that plaintiff is a mail handler/group leader

12  working at the United States Postal Service's West Sacramento Post Office and that plaintiff,

13  who is African American, brought this suit under 42 U.S.C. § 2000e alleging claims for hostile

14  work environment and retaliation.  Defendant summarizes the allegations of plaintiff's complaint

15  as follows:  plaintiff has been harassed by Wayne Thompson, a supervisor at the West

16  Sacramento Post Office; Thompson is also African American; Thompson's harassment of

17  plaintiff was racially motivated; the Postal Service allowed Thompson to remain in a position of

18  authority over plaintiff; on February 21, 2004, Thompson instructed plaintiff to perform acts he

19  believed to be inconsistent with proper operations; when plaintiff objected, Thompson conducted

20  a disciplinary meeting without allowing plaintiff to contact a union representative; when plaintiff

21  contacted a union representative after the meeting, Thompson issued plaintiff a disciplinary letter

22  of warning; also on February 21, 2004, Thompson instructed plaintiff to stop using the machine

23  he was operating, but plaintiff refused to listen; in June 2004, Thompson obtained a copy of

24  plaintiff's worker's compensation paperwork and told plaintiff that he was not eligible for leave

25  buyback; on July 4, 2004, Thompson issued a seven-day suspension to plaintiff because of

26  attendance issues, although management had already issued plaintiff a paper suspension for the

4

same issues; on August 27, 2004, Thompson attempted, without authority, to reassign plaintiff to a position directly subordinate to Thompson; when plaintiff confronted Thompson on August 27, 2004, about the attempt to reassign him, Thompson said, "Shut up, nigger.  Go move that mail."

Defendant's evidence establishes the following events related to plaintiff's exhaustion of administrative remedies:  plaintiff sought EEO counseling and filed an informal complaint on September 8, 2004; plaintiff filed a formal EEO complaint with the Postal Service on October 17, 2004; the agency found that plaintiff's complaint concerned three incidents in 2004; the first incident occurred on February 21, 2004, when plaintiff was subjected to an investigative interview without a union steward; the second incident occurred on July 4, 2004, when plaintiff was issued a seven-day calendar paper suspension; the third incident occurred on August 27, 2004, when Thompson called plaintiff "nigger"; the agency declined to investigate the February 21 and July 4 incidents because plaintiff's informal complaint was not timely filed as to those claims, the incidents were not consistent with a claim of a hostile work environment, and there was no evidence that plaintiff suffered any measurable personal harm from the incidents; the agency investigated the August 27 incident and determined that managers had taken immediate and proper action and plaintiff had not presented evidence sufficient to indicate that any agency official harbored discriminatory animus toward plaintiff; the EEOC subsequently determined that the agency properly dismissed plaintiff's claims regarding the incidents on February 21 and July 4; with regard to the August 27 incident, the EEOC determined that the single use of a racial epithet was insufficient to constitute a hostile work environment; the EEOC declined plaintiff's request for reconsideration.

Defendant's evidence reveals the following remedial actions: after a union grievance and arbitration process, the Postal Service dismissed the two letters of warning that had been issued to plaintiff on February 21, 2004, and those letters were eventually removed from plaintiff's employment record; regarding the issue of leave buyback, plaintiff filed a grievance through his union, and Jeff Davis, a supervisor, settled that matter; the Postal Service rescinded

1   the seven-day suspension plaintiff had received on July 4, 2004; on August 27, 2004, plaintiff

2   sought out Angela Batista, Manager of Distribution Operations, to inquire about Thompson's

3   authority to reassign him; Batista informed plaintiff that Thompson did not have authority to

4   reassign him, and she instructed plaintiff to return to work.

5          With respect to Thompson's use of the word "nigger" and whether such use

6   proves racial motivation, defendant cites plaintiff's deposition testimony that Thompson used the

7   word "nigger" in reference to plaintiff on only one occasion during the period of time in which

8   the allegedly harassing actions took place and that Thompson has not subsequently used the word

9   in reference to him.  Plaintiff testified that Thompson referred to him as a "nigger" on one

10  occasion "a couple years before" in an attempt to be "sarcastic" but the remark on that occasion

11  was not made in a hostile manner.  Plaintiff admitted that Batista had initiated an investigation

12  regarding the August 27, 2004 incident and determined that Thompson had in fact referred to

13  plaintiff with the racial epithet, after which the Postal Service issued a letter of warning to

14  Thompson, informing Thompson that he might be terminated for future incidents.  Defendant's

15  evidence reflects that Thompson was moved out of the automation unit and in June 2005 was

16  moved to the night shift.

17         Defendant argues that all of the allegedly discriminatory incidents that occurred

18  before August 2004 are barred because an aggrieved federal employee is required to consult with

19  a counselor within 45 days after an allegedly discriminatory action.  Defendant cites extensive

20  authority for the proposition that failure to consult with a counselor within the 45-day period

21  constitutes a failure to exhaust administrative remedies and bars the unexhausted claims from

22  further consideration.  Thus, defendant argues, plaintiff's failure to seek EEO counseling prior to

23  September 8, 2004, means that plaintiff failed to exhaust incidents that occurred more than 45

24  days prior to that date and is barred from bringing suit related to those incidents.

25         Defendant concedes that plaintiff has asserted a hostile work environment claim

26  but argues that a court cannot consider every incident that occurred in the context of an allegedly

1    hostile work environment where intervening remedial actions were taken by the employer.

2    Defendant argues that the Postal Service addressed and remedied all of the incidents alleged to

3    have occurred in this case more than 45 days prior to September 8, 2004, thus eliminating those

4    incidents from consideration as part of a hostile work environment.  Defendant reiterates that (1)

5    the Postal Service dismissed the two letters of warning Thompson issued to plaintiff on February

6    21, 2004, and the letters were removed from plaintiff's employment record; (2) the Postal

7    Service settled the leave buyback issue with plaintiff; and (3) the Postal Service rescinded the

8    letter of warning that was issued to plaintiff regarding the seven-day suspension.  Defendant

9    asserts that the agency's intervening actions demonstrate the desire of higher level managers to

10   prevent the development of a hostile working environment and show that no underlying

11   discriminatory employment policy existed.  Defendant concludes that the agency's intervening

12   actions rendered each individual incident a discrete act for purposes of determining whether

13   plaintiff timely exhausted administrative remedies.

14          Defendant also argues that the discriminatory incidents that occurred on August

15   27, 2004, are insufficient to support a hostile work environment claim.  Defendant asserts that, to

16   prevail on such a claim, a plaintiff must allege and prove a pattern of ongoing and persistent

17   harassment severe enough to alter the conditions of his employment.  Defendant contends that

18   the plaintiff in this case has not alleged continuing violations and cannot demonstrate that the

19   conditions of his employment were altered.  It is undisputed that plaintiff complained to a

20   manager about Thompson's attempt to reassign plaintiff to a position directly subordinate to

21   Thompson and that the manager reassured plaintiff that Thompson did not have the authority to

22   make such a reassignment.  As for the subsequent confrontation during which Thompson used a

23   racial epithet, defendant points to plaintiff's admission that Thompson's use of the racial epithet

24   on August 27, 2004, was the only such occurrence during the relevant time period.  Defendant

25   argues that the one-time usage of a racial epithet fails to support a conclusion that Thompson

26   harbored a racial animus toward plaintiff.  See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57,

67 (1986) (holding that mere utterance of a racial epithet that engenders offensive feelings in an employee is insufficient to violate Title VII).

Defendant distinguishes Faragher v. City of Boca Raton, 524 U.S. 775 (1998), a case cited in plaintiff's EEOC brief, in which the Court ruled that an employer may be held vicariously liable for harassment by a supervisor unless the employer takes corrective actions. Defendant asserts that the Postal Service is not liable for Thompson's actions because the agency remedied each incident alleged in plaintiff's complaint.  See McGinest v. GTE Service Corp., 360 F.3d 1103, 1120 (9th Cir. 2004) (holding that an employer may avoid liability by undertaking remedial measures, including disciplinary action, reasonably calculated to end the harassment); Ellison v. Brady, 924 F.2d 872, 882 (9th Cir. 1991) (noting that not all harassment warrants dismissal of the supervisor).  Defendant argues that the Postal Service took corrective action and remedied each incident complained of that occurred prior to August 27, 2004, and, with regard to the events of August 27, 2004, the evidence shows that a manager took immediate corrective action with regard to Thompson's attempt to reassign plaintiff, initiated a formal investigation into Thompson's use of a racial epithet later that day, found that Thompson had used the racial epithet, and issued a letter of warning advising Thompson that he could be terminated for further incidents.

Defendant's final argument is that plaintiff's allegation of retaliation fails to make out a prima facie case because a plaintiff asserting such a claim must demonstrate that (1) he was engaged in a protective activity, (2) his employer subjected him to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action.  Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  Defendant concedes that, although plaintiff did not initiate EEO proceedings until September 8, 2004, he had previously complained to Postal Service managers and had filed union grievances about Thompson's alleged harassment on several occasions.  Defendant does not dispute that plaintiff had engaged in protected activities prior to at least some of Thompson's allegedly harassing actions but argues that plaintiff has not

1  pointed to any evidence that his employer subjected him to a materially adverse employment

2  action and has not shown that any alleged retaliatory action might have dissuaded a reasonable

3  worker from making a charge of discrimination.  See Burlington N. & Santa Fe Ry. Co. v. White,

4  ___ U.S. ___, ___, 126 S. Ct. 2405, 2415 (2006).  Defendant asserts that no adverse employment

5  action was taken against plaintiff, and plaintiff was not dissuaded from engaging in further

6  protected activity.

7          The court finds that defendant's contentions are supported by the evidence and by

8  the authorities cited.  Defendant has met his initial responsibility as the party moving for

9  summary judgment, and the burden shifts to plaintiff to establish that a genuine issue as to any

10  material fact does exist and that defendant is not entitled to judgment as a matter of law.

11          Plaintiff's initial opposition to defendant's motion consists of four pages of

12  argument without citation to evidence or legal authorities.  Plaintiff asserts that he is "claiming

13  hostile work environment and retaliation" and that the incidents of harassment were "motivated

14  by retaliation not by race."  (Pl.'s Opp'n to Def. Mot. for Summ. J. filed Sep. 18, 2007, at 1.)

15  Plaintiff argues that there were eight incidents of harassment by Thompson and, although he

16  attempted to exhaust administrative remedies as to all eight, the agency chose not to consider five

17  of the incidents.  (Id. at 1-2.)  Plaintiff contends that the eight incidents were not discrete acts but

18  repeated acts of harassment that created a hostile work environment.  (Id. at 2.)

19          Although plaintiff's initial opposition challenges some of the facts asserted by

20  defendant, the opposition fails to cite evidence establishing the existence of a factual dispute.

21  Plaintiff argues that he was subjected to ongoing and persistent harassment severe enough to alter

22  the conditions of his employment, but he fails to cite evidence in support of the argument.  With

23  regard to remedial actions, plaintiff asserts that the letters of warning issued by Thompson were

24  dismissed by an arbitrator rather than by agency managers.  Plaintiff alleges that Thompson

25  previously assaulted another employee and spent time in prison.  Plaintiff states that his

26  "retaliation claim was a description and motivation of Thompson's behavior and not meant as a

1  legal retaliation claim." (Id. at 3.)  Plaintiff emphasizes the harm he has suffered and concludes

2  with an allegation that the agency allowed Thompson "to continue his outrageous behavior." (Id.

3  at 4.)

4         At the hearing on September 21, 2007, the court provided plaintiff with a copy of

5  Local Rule 56-260 and granted plaintiff leave to file supplemental opposition to defendant's

6  motion.  Subsequent to the hearing, defendant filed a notice advising plaintiff of supplemental

7  case authority relevant to defendant's legal arguments.  Plaintiff did not file a supplemental

8  memorandum of points and authorities but did file a response to defendant's statement of

9  undisputed facts as well as a separate statement of additional disputed facts.

10         Plaintiff admits all but five of defendant's 33 facts.  (Pl.'s Answer to Def.'s

11  Undisputed Facts filed Nov. 1, 2007.)  Three of the five denials are supported only by general

12  reference to plaintiff's brief in support of his EEOC appeal.  The court finds that the three

13  general denials fail to refute the facts asserted by defendant.  For example, plaintiff denies

14  defendant's statement that "Lee also alleges that Thompson's harassment was racially

15  motivated."  (See Def.'s Statement of Undisputed Facts No. 6.)  Plaintiff asserts that he "alleged

16  that Thompson [sic] action were [sic] motivated by retaliation and race."  (Pl.'s Answer to Def.'s

17  Undisputed Facts, No. 6.)  Plaintiff's assertion does not contradict defendant's statement that

18  plaintiff "also" alleged a racial motivation for Thompson's harassment.  Defendant supported

19  Undisputed Fact No. 6 with a citation to the first sentence of plaintiff's EEOC brief, which refers

20  to plaintiff's "complaint of race discrimination (hostile work environment/retaliation)."  (Pl.'s

21  Compl., Attach. at 1:20-21.)  The court finds that the document cited by defendant supports the

22  statement that plaintiff "also alleges that Thompson's harassment was racially motivated" and

23  that plaintiff's general citation to the same document does not demonstrate the existence of any

24  disputed issue of material fact.  Plaintiff's denials of Undisputed Facts No. 10 and 27 are

25  deficient in the same way and fail to establish the existence of a disputed issue requiring trial.

26  /////

1    Citing his own deposition testimony, plaintiff denies' defendant's statement that

2    the Postal Service dismissed the letters of warning issued on February 21 after a union grievance

3    process and that the letters were removed from Lee's employment record.  (See Def.'s Statement

4    of Undisputed Facts No. 22, citing Lee Dep. at 65:7-24, 68:23-69:15.)  Plaintiff instead asserts

5    that he had to go to an arbitrator to get the letters removed.  (Pl.'s Answer to Def.'s Undisputed

6    Facts, No. 22, citing Lee Dep. at 69:12.)  Plaintiff's citation to one line of the same testimony

7    cited by defendant does not refute the fact that after a grievance process the letters were in fact

8    removed from Lee's employment record.  Again, plaintiff has not demonstrated the existence of a

9    disputed issue of material fact in this regard.

10    Finally, plaintiff denies a portion of defendant's statement that the Postal Service

11    declined to investigate the February 21 and July 4 claims because they were untimely, the

12    incidents were not consistent with a hostile work environment, and there was no evidence of

13    measurable personal harm.  (See Def.'s Statement of Undisputed Facts No. 18, citing Def.'s Mot.

14    for Summ. J., Wright Decl., Ex. B at 2-5.)  Plaintiff asserts that, with regard to the July 4 claim

15    about the paper suspension, "they never stated that these incidents were not consistent with an

16    hostil [sic] work environment."  (Pl.'s Answer to Def.'s Undisputed Facts, No. 18.)  The Postal

17    Service's EEO Partial Acceptance/Dismissal explicitly rejected the February 21 and July 4

18    claims as untimely.  (Def.'s Mot. for Summ. J., Wright Decl., Ex. B at 3.)  It is not clear whether

19    the agency rejected both claims as inconsistent with a claim of hostile work environment.  On

20    page 4 of the agency's partial acceptance/dismissal, the agency set forth the law governing hostile

21    work environment claims and stated that plaintiff "does not assert, nor does the record reflect,

22    that he was subjected to disciplinary action or any other adverse affect on a term, condition, or

23    privilege of employment as a result of these incidents."  (Id., Ex. B. at 4.)  Defendant's

24    interpretation of "these incidents" as a reference to the incidents of February 21 and July 4 is not

25    unreasonable.  To the extent that there is a dispute concerning the agency's reasons for deciding

26    not to investigate the July 4 incident, the dispute is not material.  It is undisputed that both

1   incidents were rejected as untimely.  Moreover, defendant contends that plaintiff failed to

2   exhaust administrative remedies on any incident that occurred prior to August 2004.

3          A party opposing a motion for summary judgment may file a concise statement of

4   disputed facts, citing sources in the record, of "all additional material facts as to which there is a

5   genuine issue precluding summary judgment or adjudication."  Local Rule 56-260(b).  Plaintiff's

6   concise statement of disputed facts contains legal conclusions and arguments rather than facts.

7   Plaintiff begins by asserting that the agency misapplied the law in its final decision as well as in

8   its partial acceptance/dismissal, ignored five of plaintiff's issues, and instructed the investigator

9   not to investigate harassment issues.  The court finds that all of the statements proffered by

10  plaintiff as disputed facts are either undisputed, such as the fact that Thompson was disciplined

11  by the agency, or not material to the legal issues presented by defendant's motion, such as facts

12  concerning the nature and extent of plaintiff's injury.

13         Attached to plaintiff's concise statement of disputed facts is a four-page document

14  titled "Declaration" that is virtually identical to the document previously filed as plaintiff's

15  opposition to defendant's motion.[1]  The document presents opinions and argument.  Also

16  attached to the concise statement of disputed facts are 60 pages of documents comprised of

17  copies of an EEO complaint filed by plaintiff in October 2004, the complaint filed in this case,

18  and duplicates of some of defendant's exhibits.  On November 27, 2007, plaintiff submitted a

19  copy of the investigative file compiled by the Postal Service during its investigation of the EEO

20  complaint at issue in this case.

21         In reply to plaintiff's supplemental filings, defendant argues that there are no

22  disputed issues of material fact and contends that plaintiff has not submitted anything

23

24      [1]  Although the document as filed on November 1, 2007, concludes with the language to be used in an unsworn statement signed under penalty of perjury, it was not signed.  At the hearing on November 30, 2007, plaintiff was provided with a copy of the document for signature

25  and filing, if it was his intention to sign it.  See Fed. R. Civ. P. 11(a) (requiring the court to strike an unsigned paper unless the omission is promptly corrected after being called to the party's

26  attention).  A signed copy of the declaration was filed on November 30, 2007.

1  demonstrating the existence of material facts requiring a trial.  Defendant asserts that the papers

2  filed by plaintiff demonstrate the existence of a personality conflict between plaintiff and

3  Thompson and notes that Title VII "does not set forth 'a general civility code for the American

4  workplace.'"  White, 124 S. Ct. at 2415 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523

5  U.S. 75, 80 (1998)).  Defendant points out that plaintiff has admitted virtually all of the facts

6  asserted by defendant, including the dates supporting defendant's arguments concerning

7  exhaustion and the agency's corrective actions as to each incident.

8           Upon careful consideration of the parties' arguments and evidence, the court finds

9  that plaintiff's allegations reflect discrete acts of discrimination rather than a hostile work

10  environment.  "A discrete act of discrimination is an act that in itself 'constitutes a separate

11  actionable "unlawful employment practice"' and that is temporally distinct."  Ledbetter v.

12  Goodyear Tire & Rubber Co., ___ U.S. ___, ___, 127 S. Ct. 2162, 2175 (2007) (quoting Nat'l

13  R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 117 (2002)).  Examples of unlawful

14  employment practices include termination, failure to promote, denial of transfer, and refusal to

15  hire.  127 S. Ct. at 2175 (citing Morgan, 536 U.S. at 114).  "A hostile work environment, on the

16  other hand, typically comprises a succession of harassing acts, each of which 'may not be

17  actionable on its own.'"  Id. (quoting 536 U.S. at 115-16).  In contrast to a discrete act of

18  discrimination, a hostile work environment claim cannot be said to have occurred on any

19  particular day because it is the environment that constitutes the actionable wrong, not the

20  individual acts that created the environment.  Id. (citing 536 U.S. at 115-16).

21           The plaintiff in this case has presented a series of temporally distinct

22  discriminatory events that occurred in 2004.  Plaintiff alleges unlawful employment actions that

23  are independently identifiable and actionable.  The fact that he filed union grievances on most, if

24  not all, of the actions confirms that each action was independently identifiable and actionable.

25  /////

26  /////

13

1  First, on February 21, 2004, Thompson, a supervisor,[2] subjected plaintiff to a disciplinary

2  interview without allowing him to obtain union representation, then issued plaintiff a disciplinary

3  letter of warning for allegedly being out of his assigned work area when he went to talk to a

4  union representative, and finally attempted to embarrass plaintiff in front of his crew and issued

5  plaintiff another disciplinary letter of warning when plaintiff reacted by going to lunch.  All

6  disciplinary actions taken by Thompson on February 21, 2004 were rescinded within four

7  months.  (See Lee Dep. at 65-71.)  Second, in June 2004, Thompson interfered in a leave issue

8  connected with a period of time plaintiff received worker's compensation.  Plaintiff filed a

9  grievance, and the leave issue was settled in plaintiff's favor by a manager.  (See Lee Dep. at 72-

10  75, 91.)  Third, on July 4, 2004, Thompson issued plaintiff a seven-day paper suspension for

11  attendance reasons, when such a suspension had already been issued by management, and also

12  issued plaintiff a letter of warning.  Plaintiff filed a grievance, and the suspension and letter of

13  warning were rescinded about a month later.  (See Lee Dep. at 75-76, 92.)  Fourth, on August 27,

14  2004, Thompson attempted, without authority, to reassign plaintiff to a position directly under

15  his supervision.  This unlawful action by Thompson was corrected the same day by the manager

16  plaintiff went to for help.  Later that day, when plaintiff confronted Thompson about his lack of

17  authority to reassign plaintiff, Thompson said, "Shut up, nigger.  Go move that mail."  Plaintiff

18  filed a grievance, sought EEO counseling, and filed an informal EEO complaint on September 8,

19  2004.  (See Lee Dep. at 82-86.)  The August 27, 2004 incident was investigated by management,

20  it was determined that Thompson had in fact referred to plaintiff with the racial epithet, and a

21  letter of warning was issued to Thompson, informing him that he might be terminated for future

22  incidents.  Thompson was moved out of the automation unit and in June 2005 was moved to the

23  night shift to prevent him from having contact with plaintiff.  (See Lee Dep. at 99-100, 103-12.)

24

25      [2] As the interior group leader on his shift, plaintiff moves about the building, and any
   supervisor can give him instructions at any time during the day.  (Lee Dep. at 42-43.)  Thompson
26  was not plaintiff's direct supervisor at the times relevant to plaintiff's EEO claims.  (Id. at 73.)

1    The court finds that the agency correctly determined that plaintiff's EEO

2    complaint alleged discrete discriminatory incidents.  In the absence of allegations stating a hostile

3    environment claim, the agency correctly declined to investigate discriminatory incidents that

4    occurred more than 45 days prior to September 8, 2004.  See 29 C.F.R. § 1614.105 (2007).

5    Plaintiff's failure to consult with an EEO counselor within 45-days after any of the pre-August

6    2004 incidents constitutes a failure to exhaust administrative remedies as to those incidents and

7    bars consideration of these unexhausted claims.  Lyons v. England, 307 F.3d 1092, 1104 (9th Cir.

8    2002) ("Exhaustion of administrative remedies under Title VII requires that the complainant file

9    a timely charge . . . .");  Johnson v. U.S. Treasury Dep't, 27 F.3d 415, 416 (9th Cir. 1994)

10   (affirming judgment against plaintiff because his complaint to the EEO counselor was untimely);

11   Boyd v. U.S. Postal Serv., 752 F.2d 410, 414-15 (9th Cir. 1985) (holding that plaintiff was

12   precluded from pursuing his claim in federal courts because he failed to bring his grievance to the

13   attention of the EEO counselor within the time limit).  Plaintiff has not responded to defendant's

14   motion with any allegations or evidence of waiver, equitable tolling, or estoppel.  Accordingly,

15   defendant is entitled to summary judgment on all claims that plaintiff failed to exhaust by filing

16   timely EEO complaints.

17   The court finds that the events of August 27, 2004, and in particular Thompson's

18   use of a racial epithet, do not demonstrate the existence of a hostile work environment.  See

19   Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1108 (9th Cir. 1998) (holding that a plaintiff

20   must allege and prove a pattern of ongoing and persistent harassment severe enough to alter the

21   conditions of his employment).

22   The court also finds that plaintiff has failed to make out a prima facie case of

23   retaliation.  Plaintiff has not demonstrated that he was subjected to any materially adverse

24   employment action on August 27, 2004, see Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir.

25   2000), and he has not shown that the allegedly retaliatory actions by Thompson on that date

26   /////

15

1  might have dissuaded a reasonable worker from making a charge of discrimination, see

2  Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. at 2415.

3          In sum, plaintiff's evidence and arguments do not refute defendant's evidence and

4  arguments and do not establish any disputed issues of material fact.  Defendant is entitled to

5  judgment in his favor on all claims presented in this action.

6          Accordingly, IT IS HEREBY ORDERED that:

7          1.  Defendant's August 1, 2007 motion for summary judgment is granted and this

8  action is dismissed in its entirety.

9          2.  The pretrial conference set for March 14, 2008 and jury trial set for May 5,

10  2008 are vacated and dropped from the court's calendar.

11  DATED: December 17, 2007.

12

13  _____

14  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

15  DAD:kw
    ddad1\orders.consent\lee0630.msj.ord

16

17

18

19

20

21

22

23

24

25

26